*208
 
 CUDAHY, Circuit Judge.
 

 A law firm proposed a creative means of handling a mass tort case in which it was involved. The notable success of its approach persuaded the firm to request an upward fee adjustment based on the quality of its representation throughout the proceedings. Finding that the unadjusted compensation the firm received was reasonable, the bankruptcy court denied the application, and the district court agreed. We affirm.
 

 I.
 

 The law firm, Schwartz, Cooper, Kolb and Gaynor (Schwartz Cooper), represented the debtors in the bankruptcy proceedings involving UNR Industries, Inc. Proposing a novel use of bankruptcy in a mass tort situation involving thousands of asbestos-related lawsuits, Schwartz Cooper advised UNR to file for bankruptcy under Chapter 11 — a move that protected UNR’s assets and ultimately allowed the bankruptcy court to approve a fund of 92 percent of UNR’s common shares for the benefit of its creditors. The bankruptcy judge described the law firm’s performance as “downright ingenious” at times. For its services, Schwartz Cooper requested and received more than $3.2 million in legal fees.
 

 Asserting that the quality of its representation was so superior as to warrant an enhanced fee, however, Schwartz Cooper filed a request for premium compensation under section 330 of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 330. Specifically, the firm sought an additional $806,503 — 25 percent more than the fees already granted. The bankruptcy court denied the request and the district court affirmed. Schwartz Cooper now appeals.
 

 II.
 

 District courts and appellate courts review a bankruptcy court’s factual findings for clear error and its legal conclusions
 
 de novo. In re Rivinius, Inc.,
 
 977 F.2d 1171, 1175 (7th Cir.1992);
 
 Matter of Newman,
 
 903 F.2d 1150 (7th Cir.1990); Bankruptcy Rule 8013. Our review of fac-tual findings is not limited to those of the district court but extends to the bankruptcy court’s findings as well.
 
 Rivinius,
 
 977 F.2d at 1175.
 

 Section 330 of the Bankruptcy Reform Act governs compensation for certain services and costs in bankruptcy matters. 11 U.S.C. § 330. Specifically, section 330(a) allows the court to award:
 

 (1) reasonable compensation for actual, necessary services rendered ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and
 

 (2) reimbursement for actual, necessary expenses.
 

 11 U.S.C. § 330.
 

 Prior to the adoption of section 330, compensation awards were authorized under section 241 of the Bankruptcy Act of 1898, which emphasized economy of administration and conservation of the estate.
 
 In re Beverly Crest Convalescent Hosp., Inc.,
 
 548 F.2d 817, 820-21 (9th Cir.1976). In enacting section 330, Congress intended to move away from doctrines that strictly limited fee awards under section 241.
 
 See
 
 H.R.Rep. No. 595, 95th Cong., 2d Sess. 329-30,
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5787, 5963, 6286 (stating intent to overrule
 
 Beverly Crest);
 
 124 Cong.Rec. 33,994 (1978),
 
 reprinted in
 
 1978 U.S.C.C.A.N. 6505, 6511 (statement of Sen. DeConcini);
 
 In re Manoa Finance Co., Inc.,
 
 853 F.2d 687 (9th Cir.1988). This case turns on the extent to which Congress intended this evolving compensation policy to authorize fee enhancements for attorneys handling bankruptcy matters.
 

 The bankruptcy court assumed such enhancements or premium compensation might be allowed in bankruptcy cases under certain circumstances. It concluded that Schwartz Cooper demonstrated “special skill and experience” in a case involving “novel” and “complex” issues. Nonetheless, the bankruptcy court found that this was not an appropriate case for premium compensation because the compensa
 
 *209
 
 tion the firm received was awarded regularly and in accord with its attorneys’ normal hourly rates and was thus fair and reasonable as section 330 requires.
 

 In reaching that conclusion, the bankruptcy judge focused on the language and policies of the statute itself. He found that the two-fold goal of section 330, which strives to ensure that compensation is fair and reasonable and that future lawyers won’t be deterred from taking bankruptcy cases, compelled the denial of premium compensation. The district court determined that the bankruptcy judge applied the proper legal standards and did not abuse his discretion in concluding that Schwartz Cooper was reasonably and fairly compensated.
 

 Schwartz Cooper contends that the district court applied the wrong legal standard to its request for a fee enhancement. The firm argues that both lower courts directly contradicted legislative intent by applying a rule requiring only that fees be large enough to ensure that future attorneys are not deterred from taking bankruptcy cases. Schwartz Cooper also maintains that in looking to section 330’s standard of “comparable services other than in a case under this title,” the lower courts wrongly relied upon practice under federal fee-shifting statutes generally, and more specifically, practice involving enhancement for risk rather than for quality.
 

 On appeal, Schwartz Cooper does not argue that common fund cases provide a better analogy; rather, the firm urges that the plain language of section 330 — with its references to “the nature, the extent, and the value” of such services — justifies and perhaps requires a premium payment in this case. According to Schwartz Cooper, the “nature” of the services includes quality, the “extent” of the services refers to the lawyer’s relative role in the proceeding and the “value” of the services considers the financial result. Although the firm admits that the lodestar will roughly satisfy the fees required under section 330 in most bankruptcy cases, it contends that the plain language of the statute does not allow courts to elevate that measure to a presumptive fee. In its own case, Schwartz Cooper argues, the novelty of its approach, the extraordinary quality of its services and the highly successful result warrant separate compensation beyond call for a fee enhancement.
 

 In section 330 and its legislative history Congress expressed its intent that compensation in bankruptcy matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases. 11 U.S.C. § 330; H.R.Rep. No. 595, 95th Cong., 2d Sess. 329-30,
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5963, 6286. In carrying out this mandate, courts confronting fee issues in bankruptcy cases have set out to determine whether they should analyze such cases under the precedent involving fee-shifting statutes or common funds. Fee-shifting statutes — for example, the Civil Rights Act of 1964, 42 U.S.C. § 2000a-3(b), the Clean Air Act, 42 U.S.C. § 1857h-2(d), and the Fair Housing Act of 1968, 42 U.S.C. § 3612(c) — authorize prevailing plaintiffs to recover attorneys fees from the defendant. In common fund cases, the litigation results in the creation or preservation of a fund to be distributed among members of a plaintiff class, and the court awards fees out of the fund to the attorneys for the litigating class.
 
 Boeing Co. v. Van Gemert,
 
 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980);
 
 Skelton v. General Motors Corp.,
 
 860 F.2d 250, 252 (7th Cir.1988).
 

 Many courts considering whether fee enhancements are authorized in a particular case involving section 330 have looked to Supreme Court cases involving fee-shifting statutes. Although bankruptcy situations certainly share many attributes of common fund cases — most fundamentally, the existence of a fund in the court’s control — courts have viewed fee-shifting statutes as providing a more suitable analogy.
 
 [1]
 
 Specifically, the Ninth Cir
 
 *210
 
 cuit, in
 
 In re Manoa Finance Co., Inc.,
 
 853 F.2d 687 (9th Cir.1988), pointed to the substantial similarity of purpose between section 330 and the typical fee-shifting statute and the general applicability of the Supreme Court’s pronouncements on the issue of statutory fee authorizations. 853 F.2d at 690-91. The
 
 Manoa
 
 decision and an Eighth Circuit case demonstrate recent support for the view that the general principles applicable under fee-shifting statutes are relevant to fee enhancement determinations in bankruptcy cases.
 
 See In re Apex Oil Co.,
 
 960 F.2d 728, 731-32 (8th Cir.1992);
 
 Manoa,
 
 853 F.2d at 691 (stating that “§ 330 and fee-shifting statutes are sufficiently similar to justify applying the same general principles for fee enhancements”). We agree with the Ninth Circuit, however, that the analogy is certainly not perfect, and that “the general principles may require some accommodation to the peculiarities of bankruptcy matters.... ”
 
 Manoa,
 
 853 F.2d at 691. We would emphasize that section 330 of the Bankruptcy Reform Act of 1978 requires lawyers in bankruptcy matters to receive the same compensation as they would earn in performing similar services outside the context of bankruptcy. Outside bankruptcy, business lawyers charge their clients at an hourly rate and there is no evidence that they often receive an enhancement for quality.
 

 However, particularly since other circuits have pursued the analogy to fee-shifting statutes, we believe it appropriate to pursue that analogy a bit farther. The Supreme Court, in construing fee-shifting statutes, has stated that fee enhancements may be available for quality of representation, but only in the “rare” case where the counsel offers specific evidence that “the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was ‘exceptional.’ ”
 
 Blum v. Stenson,
 
 465 U.S. 886, 899, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1984). Normally, however, the lodestar fee — the number of billable hours times reasonable hourly rates — reflects the novelty and complexity of the case, the experience and special skill of counsel, the quality of the representation and the results obtained.
 
 Id.
 
 at 898-900, 104 S.Ct. at 1548-1550. Two years after
 
 Blum,
 
 in
 
 Pennsylvania v. Delaware Valley Citizens’ Council for Clean Air,
 
 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)
 
 (Delaware Valley I),
 
 the Court reiterated the “strong presumption” that factors demonstrating superior representation are accounted for in the lodestar figure and cannot serve as independent bases for increasing the fee award.
 
 Id.
 
 at 565, 106 S.Ct. at 3098. As a result, enhancements are improper except in “rare” and “exceptional” cases.
 
 Id.
 

 We believe the bankruptcy court— and the district court in affirming the bankruptcy court — applied the correct legal standard, recognizing that neither the common fund nor the fee-shifting standards are ■ controlling, but that the fee-shifting precedent may be instructive, particularly as some of its principles are incorporated in section 330. The bankruptcy court relied primarily on section 330’s language, informed by principles of fee shifting, and upon the statute’s aims that attorneys be reasonably compensated and that future attorneys not be deterred from taking bankruptcy cases due to a failure to pay adequate compensation. As we have noted, the important thing is to provide compensation in bankruptcy equivalent to that outside it.
 

 Despite Schwartz Cooper’s characterization of the lower court decisions, we do not read the bankruptcy court’s decision as relying exclusively on precedent involving enhancement for risk and thus creating a flat rule barring enhancement for quality. On the contrary, the decision denying Schwartz Cooper’s request for fee enhancement rests squarely on a determination
 
 *211
 
 that, although the firm provided services of an extraordinarily high quality, that superi- or service was accounted for in the compensation it received at highly adequate hourly rates. The analysis does not flatly prohibit fee enhancements for quality; it merely presumes, in accord with the Supreme Court cases, that such enhancements are not proper when the compensation awarded is reasonable. We therefore agree with the district court that the bankruptcy court’s legal analysis was appropriate.
 

 Finally, the bankruptcy court did not err in determining that the compensation Schwartz Cooper received was fair and reasonable. The firm received a $300,000 retainer at the start of the proceedings. One lawyer on the case, who normally billed at a rate near the top of available rates in Chicago, billed at his regular hourly rate throughout most of the case. Another agreed to bill at $265 per hour as a compromise between the $300 he normally bills for work outside the office and the $250 for work in the office. Schwartz Cooper fails to persuade us that these awards — which essentially represent the lodestar fee — do not fairly compensate for the work done or that they fall short of the compensation earned by attorneys providing comparable work outside the context of bankruptcy.
 
 See Blum,
 
 465 U.S. at 899, 104 S.Ct. at 1549;
 
 Manoa,
 
 853 F.2d at 688;
 
 Apex,
 
 960 F.2d at 732. Schwartz Cooper did not present evidence, for example, that a transaction lawyer doing similar non-bankruptcy work would have earned a premium for such work. Moreover, “[t]here is nothing in either the plain language or legislative history of this provision ... that requires a bankruptcy court to identify specific non-bankruptcy services that are comparable to the service at issue before deciding whether a given fee, with or without an enhancement, is ‘reasonable.’ ”
 
 Apex,
 
 960 F.2d at 733 (noting that the cost of comparable services is just one of a number of factors to consider in calculating reasonableness). The bankruptcy court was justified in denying an upward fee adjustment on grounds of quality.
 

 III.
 

 Por the foregoing reasons, we affirm the denial of Schwartz Cooper’s application for a fee enhancement.
 

 [1]
 

 . In
 
 Skelton
 
 this court noted that "[bjecause there is a difference between statutory fee-shifting cases and common fund cases with respect,
 
 inter alia,
 
 to who bears the direct burden of compensating plaintiffs’ attorneys,” different policies govern the two types of cases. 860 F.2d
 
 *210
 
 at 252. The court nevertheless expressed qualified agreement with the statement of the district court in that case that "regardless of any theoretical distinctions between common fund and statutory fee cases, the courts in this circuit employ the same general standards to calculate attorneys fees in both types of cases.” 860 F.2d at 253 (quoting
 
 Skelton v. General Motors Corp.,
 
 661 F.Supp. 1368, 1376 (N.D.Ill.1987)).