**In re The CELOTEX CORPORATION, Debtor.**

**Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Appellant,**

v.

**The Celotex Corporation, C. David Butler, United States Trustee, and Asbestos Settlement Trust, Appellees.**

No. 98–1518–Civ–T–26E.

United States District Court,
M.D. Florida,
Tampa Division.

Oct. 26, 1998.

See also 232 B.R. 488, 232 B.R. 493.

Charles Martin Tatelbaum, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Clearwater, FL, for Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., appellant.

Jeffrey W. Warren, Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, FL, for Celotex Corp., appellee.

Cynthia P. Burnette, U.S. Trustee's Office, Tampa, FL, for U.S. Trustee, appellee.

Kevin E. Irwin, Keating, Muething & Klekamp, Cincinnati, OH, for Kevin E. Irwin, appellee.

### *ORDER*

LAZZARA, District Judge.

The law firm of Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A. (the Law Firm), challenges in this appeal the Bankruptcy Court's order denying its request for an enhancement of its fees in connection with its representation of the Unsecured Trade Creditors' Committee (the Committee) in the bankruptcy case involving the Celotex Corporation. The Law Firm contends that the Bankruptcy Court abused its discretion in denying its application for a fee enhancement brought under the provisions of 11 U.S.C. § 330. The Celotex Corporation, joined by the United States Trustee and the Asbestos Settlement Trust [1] (the Appellees), argue that

---

1. Under the confirmed Joint Plan of Reorganization, the Trust is charged with the responsibility of compensating individuals who have

suffered asbestos-related personal injuries as a result of exposure to Celotex's products. Its assets are also to be used to pay fee enhance-

the Bankruptcy Court acted well within the bounds of its discretion in denying the application for a fee enhancement. This Court agrees with the position advanced by the Appellees and, for the reasons expressed, affirms the Bankruptcy Court's order.[2]

The standard of review which this Court must employ in evaluating the correctness of the Bankruptcy Court's order is well established. That standard generally provides that "[i]n reviewing a bankruptcy court judgment as an appellate court, the district court reviews the bankruptcy court's legal conclusions *de novo*. The district court must accept the bankruptcy court's factual findings unless they are clearly erroneous, and give due regard to the bankruptcy court's opportunity to judge the credibility of the witnesses." *In re Englander*, 95 F.3d 1028, 1030 (11th Cir.1996) (footnote omitted).

Within the context of this case involving a bankruptcy court's fee order, that standard specifically provides that "an award of attorneys' fees in a bankruptcy proceeding will be reversed only if the court abused its discretion." *In re Red Carpet Corp. of Panama City Beach*, 902 F.2d 883, 890 (11th Cir.1990). Such an abuse of discretion occurs "if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *Id.* As recently articulated by the Eleventh Circuit, "[f]or a factual finding to be 'clearly erroneous,' the Court, after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been committed." *United States v. Foster*, 155 F.3d 1329, 1331 (11th Cir.1998). Furthermore, "[w]here the evidence has two possible interpretations, the ... court's choice between them cannot be clearly erroneous." *Id.* Thus, the "clearly erroneous" standard has been characterized by

the Eleventh Circuit as "a very high standard, and one we would *rarely* be likely to find, especially in a fees situation." *In re Hillsborough Holdings Corp.*, 127 F.3d 1398, 1401 (11th Cir.1997) (emphasis added).

Turning to the record before this Court, there is no dispute that the Law Firm's involvement in this "phenomenally unique" bankruptcy case spanned a period of approximately seven years and that, during this period, it provided quality legal representation to the Committee which culminated in a joint plan providing for the payment of 90% to Celotex's trade creditors. It is also undisputed that the Law Firm filed twenty-six separate applications for compensation and that the Bankruptcy Court, based on a lodestar rate and analysis which is not challenged in this appeal, awarded fees and costs with respect to the applications over the course of the proceedings. As conceded by all the parties to this appeal, the Bankruptcy Court's total award of fees and costs to the Law Firm exceeded $1,125,000.

Notwithstanding this generous overall award, the Law Firm sought a fee enhancement in the sum of $360,000 based on the exceptional and excellent results it had obtained for the trade creditors. Following a hearing, the Bankruptcy Court denied the application. In doing so, it relied on the following factors: (1) the foreseeability of the complexity of the litigation when the Law Firm commenced its representation of the Committee; (2) the amount of compensation previously awarded to the Law Firm pursuant to the lodestar method; (3) the strong presumption inherent in the law disfavoring fee enhancements; and (4) any exceptional results achieved were the product of not just the Law Firm's efforts but the efforts of all the professionals involved in the Celotex bankruptcy proceeding.

---

ment claims such as the Law Firm's if such claims are ultimately allowed.

**2.** The Court dispenses with oral argument pursuant to Federal Rule of Bankruptcy Procedure 8012(3).

Based on this Court's review of the transcript of the fee hearing, there can be no question that the Bankruptcy Court was intimately familiar with the legal standards that governed the resolution of the Law Firm's enhancement application. *See, e.g., Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (recognizing strong presumption that lodestar figure represents reasonable fee and that upward adjustment of this figure is proper only in certain rare and exceptional circumstances); *In re UNR Indus., Inc.*, 986 F.2d 207, 211 (7th Cir.1993) (affirming bankruptcy court's decision denying fee enhancement on the basis that although law firm provided extraordinarily high-quality service, such superior service was accounted for in the compensation previously awarded); *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 880–881 (11th Cir.1990) (affirming bankruptcy court's determination that attorney not entitled to fee enhancement based on extraordinary results); *In re First American Health Care of Georgia, Inc.*, 212 B.R. 408, 417–418 (Bankr.S.D.Ga.1997) (denying request for fee enhancement after exhaustive analysis of governing law). Nor can there be any question that the Bankruptcy Court followed proper procedures in arriving at its decision to deny a fee enhancement. The only question before this Court thus becomes whether the Bankruptcy Court abused its discretion by basing its denial of the fee enhancement upon findings of fact that were clearly erroneous.

In support of its position, the Law Firm contends that the Bankruptcy Court abused its discretion by ignoring specific evidence in the record warranting a fee enhancement consisting of the unique and unforeseen obstacles it encountered in representing a constituency which had no real bargaining power and the results it ultimately achieved for the trade creditors. This Court disagrees with this contention. The record clearly reflects that the Bankruptcy Court, far from ignoring this evidence, addressed it specifically but in a way that was contrary to the Law Firm's liking. Having examined the Bankruptcy Court's findings relating to the aspects of "unique and unforeseen obstacles" and "results achieved" in light of the record, and after giving those findings the "great" deference they deserve in light of the Bankruptcy Court's unique perspective acquired over the years it presided over this complex case,[3] this Court is certainly not left with a definite and firm conviction that the Bankruptcy Court committed a mistake in making such findings.

■ In this Court's view, the Bankruptcy Court, in attempting to achieve the goal of awarding the Law Firm full but not excessive compensation, correctly relied on the "legal market" and then properly assumed the role of "act[ing] as a surrogate for the estate, reviewing the fee application much as a sophisticated non-bankruptcy client would review a legal bill." *In re Hillsborough Holdings*, 127 F.3d at 1404 (quoting from and adopting the holding of *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 848 (3rd Cir.1994)) (internal quotation marks omitted). In assuming this role, the Bankruptcy Court acted well within its discretion in determining that the fees previously awarded to the Law Firm were more than adequate to compensate it for its exceptional representation of the Committee and that such compensation did not "fall short of the compensation earned by attorneys providing comparable work outside of the context of bankruptcy." *In re UNR*, 986 F.2d at 211.[4]

The Law Firm advances an additional argument in support of its contention that the Bankruptcy Court abused its discre-

---

**3.** *See In re Prince*, 40 F.3d 356, 359 (11th Cir.1994).

**4.** As noted by the court in this case, "[i]n section 330 and its legislative history Congress expressed its intent that compensation in bankruptcy matters be commensurate with the fees awarded in non-bankruptcy cases." 986 F.2d at 209.

tion in failing to grant a fee enhancement. It contends that prior to the hearing the Bankruptcy Court had already arrived at the conclusion that such an enhancement was not appropriate. Although it is true that the Bankruptcy Court did make statements to the effect that it had made up its mind based on its prior legal experiences, these statements must be viewed in the context of the Bankruptcy Court's role as a surrogate for the bankrupt estate in which it was reviewing not just the Law Firm's application for a substantial fee enhancement but also the applications of other firms, some of whom were seeking fee enhancements totaling $1,341,000 and others of whom were seeking fees totaling over $2,000,000 pursuant to 11 U.S.C. § 503(b) based on alleged substantial contributions to the estate. When viewed from this perspective, the Bankruptcy Court's statements regarding its mind-set are nothing more than the reflections of "a sophisticated client" who has properly determined that the lodestar fees already paid to the Law Firm represented fair, reasonable, and *full* compensation for the excellent services rendered to the Committee and that a bonus in the form of a fee enhancement was not appropriate, especially in light of the fact, as previously noted, that any fee enhancement would have to be paid from assets of the Trust thereby depleting the funds available to compensate those suffering from asbestos related personal injuries.

Accordingly, the decision of the Bankruptcy Court denying the Law Firm's application for a fee enhancement is affirmed, and the Clerk is directed to close this case.

**DONE AND ORDERED.**