**In re BIG RIVERS ELECTRIC CORPORATION, Debtor.**

No. 4:99CV–117–M, 4:99CV–131–M, 4:99CV–118–M, 4:99CV–147–M, 4:99CV–119–M.

United States District Court,
W.D. Kentucky,
Owensboro Division.

Aug. 24, 2000.

---

See also 252 B.R. 393, 252 B.R. 670.

Michael A. Fiorella, Felicia S. Turner, Sullivan, Mountjoy, Stainback & Miller, P.S.C., Owensboro, KY, Mark S. Kaufman, Laura F. Nix, Russell A. Tolley, Long, Aldridge & Norman, Atlanta, GA, for Big Rivers Electric Corporation, appellants.

James G. Bruen, Jr., Genevieve Holm, J. Christopher Kohn, Civil Division, United States Department of Justice, Washington, DC, for United States.

J. Baxter Schilling, Louisville, KY, Pro se.

## MEMORANDUM OPINION AND ORDER

McKINLEY, District Judge.

This matter is on appeal from an order of the United States Bankruptcy Court for the Western District of Kentucky, Honorable David T. Stosberg, Chief Judge, awarding professional compensation to the Examiner. Big Rivers Electric Corporation (Big Rivers); the United States, on behalf of the Rural Utilities Service of the Department of Agriculture (RUS); Meade County Rural Electric Cooperative, Green River Electric Corporation, Henderson Union Electric Cooperative and Jackson Purchase Rural Electric Cooperative (collectively the Members); the United States Trustee, Ellen B. Vergos, (Trustee); and the Examiner, J. Baxter Schilling, filed separate appeals from this order. These appeals have been consolidated. Having been fully briefed, this matter now stands ripe for decision. For the following reasons, the decision of the Bankruptcy Court is affirmed in part and reversed in part.

### STATEMENT OF FACTS

Big Rivers Electric Corporation (Big Rivers) filed a Chapter 11 bankruptcy petition on September 25, 1996. This bankruptcy, while resolved in only nine months time, has generated several published opinions. Rather than recite the facts again here, the reader is referred to the following decisions: *In re Big Rivers Elec. Corp.*, 233 B.R. 768, 771–77 (Bankr. W.D.Ky.1999) (awarding fees to professionals); *In re Big Rivers Elec. Corp.*, 233 B.R. 754 (Bankr.W.D.Ky.1999) (awarding compensation to the examiner); *In re Big Rivers Elec. Corp.*, 233 B.R. 726, 728–33 (Bankr.W.D.Ky.), *aff'd* 233 B.R. 739, 742–45 (W.D.Ky.1998) (denying claim filed by prospective purchaser of Big Rivers); *In re Big Rivers Elec. Corp.*, 213 B.R. 962, 964–71 (Bankr.W.D.Ky.1997) (denying motion to disqualify bankruptcy judge and remove the examiner).

Following the Examiner's appointment, the Bankruptcy Court adopted a procedure for providing the Examiner interim compensation and reimbursement of his expenses. [Record on Appeal (R.) 111.] Under this procedure, the Examiner submitted his monthly bill to Big Rivers, with copies to the United States Trustee (Trustee), the Rural Utilities Service (RUS), and the Unsecured Creditor's Committee. The parties had ten days to object. If no one objected to the bill, Big Rivers was to pay it within three business days following the expiration of the objection period. If objections were made, the Bankruptcy Court held an expedited hearing on such objections. The failure to object, however, did not constitute a waiver of the right to object to the Examiner's final fee application. While the order for interim compensation does not set an hourly rate, during a hearing on November 14, 1996, the parties agreed the Examiner's hourly would be $180 for services in 1996 and $185 for services in 1997. [R. 127 p. 22.] From the date of his appointment until October 12, 1998, Big Rivers paid the Examiner hourly fees of $530,928.75.

On June 5, 1997, the Examiner filed a request for payment of an administrative expense. Therein, the Examiner requested compensation of $4.41 million, which was three percent of the estimated $147 million in new value brought into the estate after his appointment. [R. 504.] Following approval of the amended plan of reorganization, the Examiner submitted his Final Application for Allowance of Compensation of Services Rendered and Reimbursement of Expenses Incurred for the Period from October 18, 1996 through October 13, 1998. [R. 1165 & 1063.] Again, he sought total compensation of $4.41 million, with credit for the previous payments made based on the Examiner's hourly fees and expenses. While several parties requested discovery or an evidentiary hearing on the issue of the Examiner's compensation, the Bankruptcy Court placed a moratorium on discovery and refused to conduct such a hearing.

On March 26, 1999, the Bankruptcy Court awarded the Examiner $2,638,205 as compensation for his services during the bankruptcy. The Bankruptcy Court arrived at this figure by multiplying the Examiner's previously awarded base compensation of $527,641[1] by four. Big Rivers, the RUS, the Members, and the Trustee appealed from this decision. In sum, these parties allege that the Bankruptcy Court erred by failing to conduct a lodestar analysis, awarding an enhancement, and refusing to permit discovery or allow a hearing. Furthermore, the RUS and the Trustee contend that the Bankruptcy Court erred in not ordering the Examiner to disgorge all interim payments because of the Examiner's alleged improper side compensation agreements with certain creditors.

The Examiner also appealed the Bankruptcy Court's award. In his appeal, the Examiner asserts that the Bankruptcy Court erred in not awarding interest on the amount of compensation from the effective date of Big Rivers plan of reorganization until payment of the fee. The Examiner also contends that the Bankruptcy Court's order applied only to fees billed from October 18, 1996 through October 12, 1998. Subsequently, the Court consolidated these separate appeals into one action.

### STANDARD OF REVIEW

 This Court sits as a court of appellate review for decisions of the bankruptcy court. 28 U.S.C. § 158(a). "The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders and decrees ... of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." *Id.* The findings of fact of the Bankruptcy Court are reviewed under the clearly erroneous standard. FED. R. BANKR. 8013. The district court, however, gives "plenary review to questions of law." *Michigan Nat'l Bank v. Charfoos (In re Charfoos),*

979 F.2d 390, 392 (6th Cir.1992); *see also Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.),* 106 F.3d 1255, 1259 (6th Cir.), *cert. denied sub nom., WesBanco Bank Barnesville v. Customer Creditors,* 522 U.S. 816, 118 S.Ct. 65, 139 L.Ed.2d 27 (1997); *National Mortgage Co. v. Brengettcy,* 223 B.R. 684, 689 (W.D.Tenn.1998) ("[B]ankruptcy court's findings of fact shall not be set aside unless those findings are 'clearly erroneous.' ... Questions of law, however, are reviewed de novo."). A Bankruptcy Court's order concerning fees under 11 U.S.C. § 330 is reviewed under an abuse of discretion standard. *In re Boddy,* 950 F.2d 334, 336 (6th Cir.1991). "An abuse of discretion occurs in this context if the bankruptcy judge fails to apply the proper legal standard or to follow the proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *Chamberlain v. Kula (In re Kula),* 213 B.R. 729, 735 (8th Cir. BAP 1997) (internal quotations omitted).

### DISCUSSION

The parties raise a number of issues and arguments in this appeal. After reviewing the briefs, the main issues are as follows: 1) Whether the Bankruptcy Court failed to conduct a proper lodestar analysis in reviewing the Examiner's fee application? 2) Whether the Bankruptcy Court erred in awarding the Examiner an enhancement? 3) Whether it was an abuse of discretion for the Bankruptcy Court to prohibit discovery and not conduct a hearing on the issue of disgorgement? 4) Whether the Examiner is entitled to interest on the unpaid portion of his fee and whether he is entitled to compensation for services rendered after October 12, 1998. The Court will discuss these issues in turn.

However, before discussing the claims of error, this Court believes the Bankruptcy Court deserves recognition for all the things it did right in its handling of this

---

**1.** Big Rivers previously paid $530,928.75 to the Examiner. It appears the Bankruptcy Court reduced these fees by $3,287.75, the amount of the Examiner's travel fees.

enormously huge and complex case. From the very beginning, the Bankruptcy Court took command of the litigation and managed it in an extremely efficient manner, showing great wisdom and courage along the way. While this Court has the unpleasant task of reviewing the Bankruptcy Court's work for error and the remainder of this opinion will be devoted to that discussion, nothing stated herein should detract from what otherwise should be remembered as a job well done by the Bankruptcy Court.

## I. *Lodestar Analysis*

11 U.S.C. § 330(a)(1) provides in part:

After notice to the parties in interest and the United States Trustee and a hearing ... the court may award to ... an examiner ...

(A) reasonable compensation for actual, necessary services rendered by the ... examiner ...; and

(B) reimbursement for actual, necessary expenses.

▮ In determining reasonable compensation under § 330, courts apply the lodestar analysis utilized under the federal fee shifting statutes. *In re Boddy*, 950 F.2d 334, 337 (6th Cir.1991); *In re Atwell*, 148 B.R. 483, 488 (Bankr.W.D.Ky.1993); *see also In re UNR Industries, Inc.*, 986 F.2d 207, 209 (7th Cir.1993); *Novelly v. Palans (In re Apex Oil Co.)*, 960 F.2d 728, 731 (8th Cir.1992); *Burgess v. Klenske (In re Manoa Finance Co.)*, 853 F.2d 687, 688 (9th Cir.1988); *Chamberlain v. Kula (In re Kula)*, 213 B.R. 729, 736 (8th Cir. BAP 1997). The lodestar analysis considers a reasonable fee to be the product of the reasonable hourly rate and the number of hours reasonably expended. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Thus, the proper starting point for determining the reasonableness of a fee under § 330 is the lodestar figure. *Id.* at 433, 103 S.Ct. 1933; *In re Kula*, 213 B.R. at 737; *In re Public Service Co. of N.H.*, 160 B.R. 404, 419 (Bankr.D.N.H.1993). In arriving at this

figure, it is important for the court "to provide a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933. At a minimum, however, the court must expressly calculate the lodestar amount in determining reasonable compensation. *In re Boddy*, 950 F.2d at 338.

▮ Prior to *Hensley*, courts analyzing fee requests relied on the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). Under the *Johnson* factors, courts considered the following when reviewing fee requests: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* Following the Supreme Court's decision in *Hensley*, courts began using the lodestar approach, discussed above, to determine fee awards instead of an analysis of the *Johnson* factors. The *Johnson* factors, however, were not completely abandoned. The Supreme Court in *Hensley* indicated that the lodestar analysis subsumes most, if not all, of the *Johnson* factors. *Hensley*, 461 U.S. at 434 fn. 9, 103 S.Ct. 1933; *In re Boddy*, 950 F.2d at 338. Thus, some courts utilized the *Johnson* factors to assist it in setting the reasonable hourly rate or in determining the reasonable time expended. *Hamlin v. Charter Township of Flint*, 165 F.3d 426, 437 (6th Cir.1999) ("[T]rial court may apply the Johnson factors either after the court's initial valuation of the hours reasonably expended at a reasonable rate or during its initial evaluation."); *In re At-*

*well,* 148 B.R. 483, 488–92 (Bankr.W.D.Ky. 1993) (setting forth which *Johnson* factors are relevant in determining reasonableness of the hourly rate or the time expended); *In re Belknap,* 103 B.R. 842, 843 (Bankr. W.D.Ky.1989).

 At the end of its opinion, the Bankruptcy Court concluded that the Examiner was entitled to base compensation of $527,641. In arriving at the base compensation amount, the Bankruptcy Court never specifically utilized the word "lodestar" and failed to expressly discuss the reasonable hours expended by the Examiner or whether his hourly rate was reasonable. Although it was never discussed in these terms, the Bankruptcy Court in essence performed a lodestar analysis by discussing the *Johnson* factors which, as the Supreme Court instructed, are subsumed in the lodestar analysis.[2] It appears that in determining the base compensation, the Bankruptcy Court found unreasonable some of the time expended by Examiner. Specifically, the Bankruptcy Court reduced the fees previously awarded to the Examiner pursuant to the interim compensation orders by $3,287.77. This amount represented fees associated

with the Examiner's travel time. [DN 37 p. 64.] Additionally, in awarding the base compensation, the Bankruptcy Court obviously found reasonable the Examiner's hourly rate established by the interim compensation order. No one objected to the Examiner's hourly rate when it was approved for interim compensation despite the hourly rate falling on the high side of the fee spectrum for customary bankruptcy fees.[3] [R. 127 p. 22.] The Bankruptcy Court's analysis of the *Johnson* factors and the record support the conclusion that the number of hours expended and the hourly rate charged were reasonable under the circumstances. Therefore, is was not an abuse of discretion for the Bankruptcy Court to award compensation of $527,641.00 to the Examiner.[4]

## II. *Fee Enhancement*

 The Bankruptcy Court awarded the Examiner a fee enhancement of $2,110,564, or four times the base compensation of $527,641. Big Rivers, the Trustee, the RUS, and the Members contend that the Examiner is not entitled to such an enhancement.[5] These parties ar-

2. While the Court finds the Bankruptcy Court essentially performed a lodestar analysis, in future cases the Bankruptcy Court should analyze fee requests under § 330 by specifically conducting a lodestar analysis into the reasonableness of the hours expended and the hourly rate. The Bankruptcy Court should also specifically set forth and explain its rationale for each finding, utilizing the *Johnson* factors where applicable. *See Hensley,* 461 U.S. at 437, 103 S.Ct. 1933 ("It remains important ... for the district court to provide a concise but clear explanation of its reasons for the fee award.").

3. In its objections before the Bankruptcy Court, the Trustee argued that the Examiner should only receive half his normal hourly rate or $95. This rate is consistent with those cases where the Court utilized a special master. [R. 1174 p. 13–15.] The Bankruptcy Court properly rejected this argument. Such a rate would not have constituted a reasonable hourly rate for the work of the Examiner.

4. There is one caveat, however. Big Rivers objected to a portion of this "base compensa-

tion" arguing that approximately $84,000.00, represented fees associated solely with the pursuit of the fee enhancement. The Bankruptcy Court never addressed Big Rivers objection to the Examiner's fees associated with his pursuit of his fee enhancement because it felt an enhancement was appropriate. However, in light of this Court's decision that no enhancement was warranted, the appropriateness of such fees is now an issue. Upon remand, the Bankruptcy Court will need to address this issue consistent with this Court's opinion in 4:99CV–175–M.

5. The Examiner contends that the RUS and the Members are not "person's aggrieved" by the Bankruptcy Court's order and, therefore, lack standing to appeal. To be a "person aggrieved," a party must "have been directly and adversely affected pecuniarily by the order" so that it "directly diminishes a person's property, increases his burdens, or impairs his rights." *Fidelity Bank, Nat'l Ass'n. v. M.M. Group, Inc.,* 77 F.3d 880, 882 (6th Cir. 1996). The Court declines to address the standing argument with respect to the Mem-

gue that the lodestar amount represents reasonable compensation and that this case does not constitute the rare or exceptional case justifying a fee enhancement. Big Rivers further contends that the Bankruptcy Court abused its discretion by ordering an enhancement which greatly exceeded the maximum permissible enhancement of 33% of the lodestar amount. The Examiner contends that his actions during the bankruptcy, especially bringing in $147 million in new value, justify the enhancement.

█ In reviewing the Bankruptcy Court's opinion, it seems that the Bankruptcy Court focused on matters which were not particularly relevant to the issue of determining a reasonable fee for the services of the Examiner. The tenor of the opinion seemed punitive toward Big Rivers and its professionals. The Bankruptcy Court dwelled on what it felt was "Big Rivers' obsessive devotion to the PKEC deal." The Bankruptcy Court believed that "Big Rivers wasted millions of dollars in attorney fees seeking approval of a quixotic plan based on the PKEC contract that violated public policy and violated the fiduciary duty of the debtor." It could not see "how it would be fair and equitable to reward counsel for Big Rivers for pursuing an unconfirmable plan, yet deny enhanced compensation to an Examiner who prodded, cajoled, and coordinated the parties to the point of generating somewhere between another 100 to 140 million additional dollars for the estate." At the end of its opinion, the Bankruptcy Court openly revealed the punitive nature of its opinion by stating "we do not hesitate to suggest reduction of the fees awarded to counsel for Big Rivers in an amount equal to the additional fees awarded to the examiner. How appropriate it would be to reduce any award for pursuing a plan based on a contract that violated public policy and violated the Debtor's fi-

duciary duty, as well as for failing to immediately and forthrightly disclose the No Shop Clause." *In re Big Rivers Elec. Corp.*, 233 B.R. 754, 759–60, 768 (Bankr. W.D.Ky.1999).

Not only does the Court believe that the Bankruptcy Court lost focus of the real issue, it does not believe that the record can support a conclusion that millions of dollars were "wasted" on the pursuit of the PKEC deal and that Big Rivers violated its fiduciary duty. The record cannot support this conclusion because the Bankruptcy Court allowed no proof on these issues and did not properly develop the record.

Big Rivers, its constituents and most of its creditors believed the PKEC deal was the best deal to be had for the estate and it was the plan which Big Rivers pursued in the bankruptcy. There were those who disagreed. There were questions raised by some who suggested that Big Rivers, by not negotiating with other bidders such as LG & E, was not fulfilling its fiduciary duty of maximizing the value of the estate for the creditors. These objections came to a head in February 1997, when the Bankruptcy Court entertained a motion by LG & E to establish an auction process to sell Big Rivers' assets to the highest bidder. Big Rivers and most of its creditors argued strongly against the auction. Big Rivers felt if given the opportunity it could show the Court that it was fulfilling its fiduciary duty by pursuing the PKEC deal. However, Big Rivers was never given that opportunity. Instead, in a Memorandum–Opinion and Order entered February 21, 1997, Judge Roberts, aware of the costs and delays associated with litigating these issues and concerned of losing all prospects of settlement, declared "in an effort to circumvent this litigation nightmare and at the same time finally resolve the questions surrounding the Debtor's fulfillment of its fiduciary duty to maximize the value of its assets, the Court will impose its own

bers and the RUS because they advance no issues that differ from those raised by the Trustee or Big Rivers on the fee enhancement

issue. The standing of the RUS and the Trustee on the disgorgement issue will be discussed later in this opinion.

solution." [R. 241 p. 3.] The Bankruptcy Court ordered an auction.

Thus, the Bankruptcy Court's solution put to rest the questions regarding Big Rivers' alleged breach of fiduciary duty. It was no longer necessary to answer those questions. It was no longer necessary to give Big Rivers an opportunity to defend itself against the allegations. It was no longer necessary to determine whether the PKEC deal was truly the best deal or whether millions of dollars had been wasted on the pursuit of that deal. Judge Robert's solution was consistent with the tone he set early on in this case that settlement, rather than litigation, should be the goal.

However, despite having put these issues to bed, the Bankruptcy Court, for some reason, woke them up again. The Court realizes that Judge Stosberg was hampered by the fact that he did not preside over the case when these issues were resolved, however, the record clearly reveals how Judge Roberts handled them and his solution to them. Furthermore, the record clearly reveals that Judge Roberts did not question the conduct of Big Rivers or its professionals, when he wrote that

> While this Court may question whether the Agreement was actually the best deal for [Big Rivers], it does not question the good faith of [Big Rivers] or its professionals in determining that the Agreement, even with the No-Shop Clause, was in the best interest of [Big Rivers]. When faced with the economic pressures on [Big Rivers], it is easy to understand why it would accept the PKEC 'bird in a hand' rather than enter the Chapter 11 wilderness without a deal.

*In re Big Rivers Electric Corp.,* 233 B.R. 726, 736 (Bankr.W.D.Ky.1998) (finding PKEC agreement void as a matter of public policy). About a year later, the same Bankruptcy Court, albeit a different Judge, not only questioned the good faith of Big Rivers and its professionals but used words like "ineptitude," "lack of candor," "ridiculous" and "obfuscation" in recommending that its professionals fees be reduced by the amount of the Examiner's enhancement. Furthermore, the same Bankruptcy Court which had earlier stated that it easily understood why Big Rivers would accept the PKEC "bird in the hand" rather than enter the "Chapter 11 wilderness" without a deal, referred to the PKEC deal as an "extravagant diversion."

To support his criticism of Big Rivers' pursuit of the PKEC transaction, Judge Stosberg quoted from this Court's opinion in the PKEC appeal. In the PKEC appeal, this Court held that the PKEC contract was void because of the No Shop Clause, however, it never expressed any opinion that Big Rivers' pursuit of the PKEC deal was a breach of its fiduciary duty or that its pursuit was a waste of time or money. In fact, the Court noted that although the Bankruptcy Court had not ruled on the fiduciary duty issue, the Bankruptcy Court's opinion "strongly suggests no such breach occurred." *In re Big Rivers Elec. Corp.,* 233 B.R. 739, 754 n. 5 (W.D.Ky.1998).

It is not clear why Judge Stosberg decided to reopen these issues. To add to the confusion, it seems Judge Roberts got caught up into the fray for he went along with the suggestion that Big Rivers' professionals fees be reduced by the approximate amount of the Examiners' enhanced fee.[6] The Court is unsure what caused this shift in opinion unless it was the position taken by some of those objecting to

---

**6.** Judge Roberts, in an equally harsh opinion, subsequently found that Big Rivers in fact did violate its fiduciary duties and cut all fees of Big Rivers' counsel associated with the PKEC transaction. *In re Big Rivers Electric Corp.,* 233 B.R. 768, 786–89 (Bankr.W.D.Ky.1999).

This opinion was rendered after the ruling on the Examiner's fees. The issue of breach of Big Rivers fiduciary duties is also currently on appeal to this Court, and is discussed more fully therein. *In re Big Rivers Electric Corp.,* 4:99CV–97–M.

the Examiner's fee and enhancement. Regardless, if the Bankruptcy Court felt these issues had become relevant again in deciding the Examiner's fee, Big Rivers and its professional should have at the very least been given an opportunity to defend against them. However, the Court does not believe that any of these issues are of particular significance in deciding a reasonable fee for the Examiner and the Bankruptcy Court erred in focusing on them in the first place.

■■■■■ As noted, the proper focus in determining a reasonable fee for the Examiner is the lodestar analysis. In *Hensley,* the Supreme Court indicated that determining the lodestar amount does not end the fee inquiry. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. After determining this amount, the court may adjust the fee upward or downward according to other considerations. *Id.* However, there is a strong presumption that the lodestar amount represents "reasonable compensation." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564–65, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (*Delaware I*); *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Burgess v. Klenske (In re Manoa Finance Co.),* 853 F.2d 687, 691–92 (9th Cir.1988). Enhancement is reserved only for "rare" and "exceptional" cases. *Delaware I,* 478 U.S. at 565, 106 S.Ct. 3088. The fee applicant may overcome this presumption by presenting specific evidence that the quality of service rendered and the results obtained were superior to what one reasonably should expect in light of the hourly rates charged and the number of hours expended or by presenting other factors, such as the *Johnson* factors or the cost of comparable non-bankruptcy services, not previously factored in to the lodestar analysis. *Chamberlain v. Kula (In re Kula),* 213 B.R. 729, 739 (8th Cir. BAP 1997); *see also Novelly v. Palans (In re Apex),* 960 F.2d 728, 732 (8th Cir.1992) (service and results must be exceptional in light of hourly rate and number of hours);

*In re Manoa Finance Co.,* 853 F.2d at 687, 692 (fee applicant must show why results obtained not reflected in lodestar amount); *In re of First Am. Health Care of Ga. Inc.,* 212 B.R. 408, (Bankr.S.D.Ga.1997) (enhancement warranted where unforseen obstacles are placed in applicant's path, unforseen role is thrust on to the applicant, or results obtained far exceed reasonable expectations at the outset of the case); *In re Farah,* 141 B.R. 920, 924 (Bankr. W.D.Tex.1992) (results obtained must be superior to what can reasonably be expected in light of fees claimed). However, courts must remember that most of the *Johnson* factors, including "the novelty [and] complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent basis for increasing the basic fee award." *Delaware I,* 478 U.S. at 565, 106 S.Ct. 3088 (citing *Blum,* 465 U.S. at 898–900, 104 S.Ct. 1541.) (internal quotations omitted).

■■■■■■ Section 330 of the bankruptcy code was designed to compensate attorneys and other professionals an amount similar to that which they would receive after performing similar services outside of bankruptcy. 11 U.S.C. § 330(a)(3)(E); *In re UNR Industries, Inc.,* 986 F.2d 207, 210 (7th Cir.1993). It was not designed to provide a windfall to the bankruptcy lawyer. "Outside bankruptcy, business lawyers charge their clients at an hourly rate and there is no evidence that they often receive an enhancement for quality." *In re UNR,* 986 F.2d at 210. "[W]hen an attorney first accepts a case and agrees to represent the client, he obligates himself to perform to the best of his ability and to produce the best possible results commensurate with his skill and his client's interest." *Delaware I,* 478 U.S. at 565, 106 S.Ct. 3088. That is precisely what the Examiner obligated himself to do when he agreed to serve in that capacity.

After fully reviewing the record and the Bankruptcy Court's opinion, the Court finds that the Bankruptcy Court abused its discretion in awarding an enhancement to the Examiner. Judge Stosberg likened the Examiner to a bankruptcy trustee and felt a percentage fee was appropriate. This Court feels the Examiner played more of a quasi-judicial role, like that of a Magistrate. The Bankruptcy Court assigned him the duty to "attempt to negotiate a global settlement of the disputes in this case and the development of a consensual plan of reorganization." [R. 79] The Examiner received compensation of $527,641 for his services during the bankruptcy. He was paid at an hourly rate of $185, a rate that is his normal hourly rate and at the top end of the customary bankruptcy fees. As stated by another court in ruling on enhancements sought by various professionals in a Chapter 11 bankruptcy, the presumption that the lodestar figure represents a reasonable fee "can not be overcome by generalized rhetoric of 'success' and 'value' but only by a specific showing of exceptional activity without which the estate likely would not have achieved the results obtained by other specialists of like background and rates, or exceptional activity beyond that reasonably contemplated at the time of the original retention." *In re Public Serv. Co. of N.H.,* 160 B.R. 404, 409 (Bankr.D.N.H. 1993). The results obtained in this Chapter 11 bankruptcy were undoubtedly outstanding, however, this is not the "rare" or "exceptional" case that warrants a fee enhancement. The parties quickly resolved their issues and agreed to an amended plan of reorganization settling all claims within nine short months of filing the original petition. As the Bankruptcy Court noted, the Examiner played a significant and material role in reaching this result, however, despite his contention to the contrary, he was not solely responsible for bringing in an additional $147 million in new value to the estate. The Bankruptcy Court recognized on several occasions that it was the effort of all the parties that led to this increase in value and the consensual consummation of Big Rivers' plan of reorganization. [R. 318 p. 121; R. 670 p. 44; R. 1048 p. 48, 74.]

The Examiner did exactly what the Bankruptcy Court asked him to do—attempt to negotiate disputes and aid in the development of a consensual plan of reorganization. He undertook his duties and gave quality service to the Bankruptcy Court. He is entitled to a reasonable fee for his services. However, there is no evidence to suggest that the quality of service rendered was superior to that which one should reasonably expect in light of the hourly rates charged. The factors which the Bankruptcy Court used to justify the enhancement are fully reflected in a lodestar fee and cannot serve as a basis to increase his fee beyond that amount. Therefore, the Bankruptcy Court erred in awarding the Examiner compensation in addition to the lodestar amount.

### III. *Disgorgement*

The Trustee and the RUS contend that the Examiner must disgorge all payments received because of his compensation agreements with certain creditors. They maintain the Examiner began negotiations with the Chase Manhattan Bank, the Bank of New York, and Mapco Equities within a few weeks after his appointment. Having entered into such agreements, the Trustee and RUS claim that the Examiner was no longer a disinterested person as required under 11 U.S.C. § 1103(d). Furthermore, they claim the Examiner violated the disclosure rules under Bankruptcy Rule 2014(a). These parties argue that the Bankruptcy Court erred in not allowing discovery or conducting a hearing on this issue. The Examiner argues that no such fee agreements existed; that the parties knew early in the case that he would seek compensation based on a percentage of new value; and that Judge Roberts specifically authorized negotiating a percentage fee agreement.

The Examiner further asserts that the disgorgement issue is not properly before the Court because the RUS lacks standing to appeal and the Trustee failed to raise this issue in its statement of issues on appeal. The Examiner raises some interesting questions concerning the RUS's standing on this issue, however, the Court need not address them now because it is of the opinion that the Trustee has properly raised the disgorgement issue on appeal.

 It is certainly not questioned that the Bankruptcy Court has considerable discretion in determining the scope of discovery. Likewise, with regard to fee applications, the nature of the hearing will depend on the situation. A full-blown evidentiary hearing is not always needed or required. However, when parties in interest raise an issue, the resolution of which depends on the outcome of disputed facts, a court must conduct some proceeding which allows it to garner the facts and base its decision on the record.

██ The Bankruptcy Court never explicitly mentioned the disgorgement issue in its opinion. The Examiner argues that the Bankruptcy Court decided the disgorgement issue by finding the "unfounded accusations have proved to be totally devoid of merit." However, it is not clear to this Court that the Bankruptcy Court was referring to the disgorgement issue when it called the accusations unfounded. But even if the Examiner is correct, what did the a court base its finding on? There is no record from which to make such a finding. If the Bankruptcy Court summarily decided these issues, it erred, for there are issues of material fact which exist which require some sort of hearing to resolve them.

Contrary to the assertions of the Examiner, it does not appear that the issue of disgorgement was decided by the Bankruptcy Court. In fact, in reading the opinion, it seems as if the Bankruptcy Court may have misconstrued the arguments being made by the RUS and the Trustee with regard to this issue. In the opinion, the Bankruptcy Court discussed at length Big Rivers' and the RUS's complaints about the Examiner's *ex parte* contact with the court. The RUS relied on the *ex parte* communication issue in its motion seeking recusal of Judge Roberts. However, the objections raised by the parties regarding disgorgement are not based on these *ex parte* contacts. Instead, the objections centered on whether the Examiner negotiated and obtained certain side compensation agreements with various creditors. These issues were properly raised but never resolved. Therefore, the case must be remanded to the Bankruptcy Court for proper resolution of this issue.

## IV. *Interest and "Total and Final Compensation"*

The Examiner's appeal from the Bankruptcy Court's order denying his motion to alter or amend raises two issues. First, the Examiner contends he is entitled to interest on the unpaid portion of the fee from the amended plan of reorganization's confirmation date. Second, the Examiner asserts that the Bankruptcy Court's award of compensation was not "total and final compensation" for all services rendered, but only those services rendered from October 18, 1996 through October 12, 1998. The Examiner filed a motion to alter or amend raising these issues but the Bankruptcy Court summarily overruled it without elaboration.

With respect to interest, the Court finds this issue moot. The Examiner sought interest on the unpaid portion of his fee, $2,107,276.25,[7] from July 17, 1998 until paid. The unpaid portion of the fee represents the enhancement allowed by the Bankruptcy Court. In light of the Court's decision above, no unpaid portion of the fee remains. Therefore, the Court need not address this issue.

7. This figure equals the amount of the enhancement, $2,110,564, less the hourly travel fees disallowed by the Bankruptcy Court, $3,287.77.

Turning to the issue of the time period of the fee application, the Bankruptcy Court failed to clarify its opinion when it denied the Examiner's motion to alter or amend so this Court will have to guess what was in Judge Stosberg's mind at the time. At one point in his opinion, Judge Stosberg wrote, "The Examiner, having been compelled to fight for his fees, will at least earn some additional compensation for enduring this battle." Additionally, he used the words "total final compensation" in his Order. *In re Big Rivers Elec. Corp.*, 233 B.R. 754, 768 (Bankr.W.D.Ky.1999). This, in addition to his denial of the motion to alter or amend, indicates that he intended the award to compensate the Examiner for all work completed or to be completed. On the other hand, the fee application was only for a set period of time and it is clear from the record that Judge Roberts, at least, contemplated a future fee application from the Examiner because he was participating in several appeals, some dealing with his fee and others dealing with the Pacificorp appeals or other matters.

The Court believes Judge Stosberg intended his award to fully and completely compensate the Examiner, but given the Court's ruling on the enhancement, the Court believes the Examiner may be entitled to compensation for certain services after October 12, 1998, the extent of which will be addressed in the opinion rendered in 4:99CV–175–M.

## CONCLUSION

In summation, the award of base compensation of $527,641.00 to the Examiner is **affirmed**, with the caveat noted herein. However, the Bankruptcy Court erred in granting the Examiner an enhancement of this base compensation and by failing to decide the disgorgement issue. Furthermore, the Examiner may be entitled to compensation for certain services rendered after October 12, 1998. Therefore, this matter is **reversed** and **remanded** to the Bankruptcy Court for further proceedings consistent with this opinion.